THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO R. VÉLEZ, Defendant and Appellant.

No. 15729.   Argued December 3, 1954.—Decided January 12, 1955.

*Charles H. Juliá* and *Santos P. Amadeo* for appellant. *J. B. Fernández Badillo, Acting Attorney General* and *Rafael L. Ydrach Yordán, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The prosecuting attorney filed an information against Antonio R. Vélez Meléndez for the crime of perjury, on the basis that while he "was questioned as a witness by the undersigned in the investigation of the cases of *The People of Puerto Rico* v. *Antonio Burgos Dávila,* Insular Police No. 1245, for the crimes of murder in the second degree and attempt to kill, after having . . . . sworn to testify, declare and say the truth . . . he unlawfully, wilfully, maliciously and corruptly, and contrary to such oath . . . declared under oath that it was true that 'the victim Santiago Flores Quintero attacked the insular policeman Antonio Burgos Dávila; that the latter fell to the ground; that Javier Jiménez González ran toward the policeman Antonio Burgos Dávila and attacked him stabbing his right hand twice with a dagger . . . ; that while Antonio Burgos Dávila was lying on the floor, Santiago Flores Quintero was over his body; that policeman Antonio Burgos Dávila fired several shots lying flat on the floor; that the policeman Antonio Burgos Dávila was wounded during that transaction of events; that defendant seized a dagger from the hands of Javier Jiménez Gonzá-

lez...; that blood was flowing from the hands and fingers of the policeman Antonio Burgos Dávila at the place of occurrences; (and)...that the Justice of the Peace of Loíza... did not administer an oath to defendant when the latter testified before said Magistrate in connection with these matters,' knowing and being aware of the falsity of these material and important matters, which matters were material and important in the investigation of the events in which Santiago Flores Quintero was killed and Javier Jiménez González was wounded by the shots fired by policeman Antonio Burgos Dávila..." On the basis of similar allegations, the prosecuting attorney also charged Fermín Martínez with the crime of perjury. The cases were tried jointly and the jury rendered a verdict of guilty against Vélez Meléndez and a verdict of acquittal in favor of Martínez. The trial court sentenced the former to an indeterminate sentence of one to five years' imprisonment in the penitentiary, which was suspended, and acquitted the latter. Feeling aggrieved, Vélez Meléndez appealed to this Court.

The first error assigned on appeal is that "the trial judge erred in not ordering the stenographer to take in shorthand the argument of the prosecuting attorneys to the jury, thus jeopardizing appellant's rights." In discussing this error appellant relies principally on § 3 of the Act of March 10, 1904 (Sess. Laws, p. 120), "creating the positions of stenographic reporters of the District Courts,..." and providing that:

"The said reporters shall correctly report all oral proceedings had in said courts and the testimony taken in all cases tried before said court, but the parties may, with the consent of the judge, waive the reporting by such reporter of any such proceedings or testimony."

It is of general knowledge that in criminal cases tried before our superior courts, the stenographer reporters never take in shorthand the closing arguments which are given

—after the oral testimony is finished and before the judge transmits his instructions to the jury—by the prosecuting attorney as well as by the defense. The same thing happens in most of the states of the American Union and in the federal courts. Of this practice we may take judicial notice. In case defendant wishes that these arguments be taken in shorthand, he should clearly request this of the court.[1] Otherwise his silence in that respect may be interpreted as a waiver of that right.

In this specific case, there is no showing in the record that the stenographer took the statements of the defense and the prosecuting attorney, or that the defense expressly requested it. The record is silent about it. Yet, from the stenographic record now before us it appears that while the prosecuting attorney was presenting his argument to the jury the following incident took place:

"Mr. Juliá (Vélez Martínez' attorney): Let us ask the stenographer to take down the last sentence of the prosecuting attorney.

"Hon. Judge: Let it be recorded.

"Mr. Juliá: The prosecuting attorney addressing defendant Vélez Meléndez states 'if defendant also considers himself a bandit.'

"Prosecuting Attorney Viera: I am raising an argument Your Honor, that in the testimony . . . of Antonio R. Vélez Meléndez which defendant makes his own as a piece of evidence, the latter says, referring to Santiago Flores in the last line,

---

[1] Section 356 of the Code of Criminal Procedure, as amended by Act No. 4 of April 18, 1925 (Sess. Laws, p. 108) provides among other things that within ten days of the filing of the appeal, appellant may prepare a statement of the case or instead he may prepare the transcript of the evidence which shall contain "a transcript of the testimony and evidence offered and introduced, and of all decisions, actions or statements of the court, and of all objections and exceptions of the district attorney and of the attorney for the defendant and of questions or matters in connection therewith." Said Section does not mention specifically the arguments of the district attorney and of the defense.

(citation).[2] However he brought evidence that he had been convicted of a crime and that said conviction was committed long before Vélez Meléndez testified. I ask, how can he accuse Santiago Flores Quintero of being wicked if he says that he is like a brother or a father of Santiago, without their being relatives. Now I say, for the sake of argument, 'or perhaps he considers Santiago Flores a bandit and regards himself a bandit too.' It is like an argument."

As we have seen, as soon as the defense moved the court to include in the record the statements of the prosecuting attorney, the court so ordered granting in this way the request made by the defense to this effect. It is to be presumed that if the defense had moved the court to order the stenographer to take stenographic notes of any other part of the argument of the prosecuting attorney, or the entire argument, the court would have so ordered. See *People* v. *Velázquez*, 72 P.R.R. 40. Under the circumstances, we do not believe that defendant's rights were impaired. Besides, the latter has not shown that by this conduct he suffered any harm. Cf. *People* v. *Vega*, 70 P.R.R. 782, 784.

■■ Defendant likewise alleges that the trial court erred "in failing to give...special instructions to the jury." The only special instruction requested by the defense was the following: "if the gentlemen of the jury have a reasonable doubt as to whether defendants knowingly falsified material matters knowing the matters to be false, whether material or not, then it is your duty to give defendants the benefit of that doubt and to acquit them." The court denied the requested instruction. We do not believe that this error was committed. The general instructions given

---

[2] In the sworn statement given by Vélez Meléndez before the prosecuting attorney on April 5, 1951, the following appears:

"Q.—Did something happen when you were walking toward Palmer Street?

"A.—Yes, sir. Santiago Flores was coming out.

"Q.—Do you know him?

"A.—Personally, to me he is like a father or a brother."

by the court as we shall see were extensive and covered amply the special instructions requested by the defense. See *People* v. *Ramírez*, 50 P.R.R. 224. Said general instructions were in its pertinent part as follows:

"The crime of perjury as defined in our laws is committed by a person when the latter having taken an oath that he will testify, declare, depose, or certify truly before any tribunal, officer, or person competent to administer oaths, in any of the cases in which such an oath may by law be administered, willfully and contrary to such oath, states as true any material matter which he knows to be false.

". . . . . . . . . ,

"The crime of perjury may be committed in two ways: First: by taking an oath and stating as true a material matter, knowing it to be false or, Second: taking an oath and stating as true a material matter which declarant does not know to be true, which is equivalent to stating as true a matter he knows to be false.

"In every case of perjury it should be proved which is the concrete and material matter which defendant is charged to have sworn to be true knowing it to be false, or to have sworn to be true without knowing it to be so. If the matter which is sworn to be true is not material to the case, the crime of perjury does not exist. That is, if it is not material to the case under investigation but to the case which the prosecuting attorney was investigating the day of the occurrences. To determine whether or not the crime of perjury is committed it is not enough to prove that what defendant said was false, but it is also necessary to prove, beyond any reasonable doubt that he said that falsehood maliciously and corruptly with the intention of deceiving and that it was concerning a material and essential matter.

". . . . . . . .

"You are instructed that the matters must be performed wilfully, that they should not be the result of deceit or of error. When the person against whom the crime of perjury is charged declares matters which are alleged to be false, he must have declared them knowing that they were false, and also wilfully, that is, maliciously and corruptly with the intention of deceiving, not by error or inadvertency. That means that sometimes a

false thing is stated in the belief that a truth is being stated and in that case the crime of perjury does not exist, because it is not committed maliciously, that is, a mistake is not perjury.

". . . . . . . . .

". . . If you find that as the result of the evidence admitted by the court, Antonio R. Vélez Meléndez, declared under oath in the place and on the date stated in the information, what is said in the information in the manner I have previously indicated, and that he did so with the intention of deceiving, what he said under oath to the district attorney being false and that he did so maliciously and wilfully; and if you believe all this beyond any reasonable doubt, then it is your duty to find Antonio R. Vélez Meléndez guilty of the crime of perjury (felony)."

The court also explained extensively to the jury what is understood by a reasonable doubt and indicated to them that in case such a doubt existed they should acquit defendant.

On the other hand, the record sent to this Court does not disclose that the defense made specific objections to the instructions transmitted, giving the trial court an opportunity to correct them, if necessary. See *People v. Martínez*, 50 P.R.R. 744 and *People v. Defilló*, 58 P.R.R. 456.

■ Appellant likewise insists that "the verdict of the jury is void because it is a verdict by compromise, since the jury acquitted co-defendant Fermín Martínez on the same evidence." In the record there is not the slightest indication that the verdict rendered was obtained by compromise. What follows from the evidence is that on the night of March 31, 1951, the policeman Antonio Burgos Dávila, while on duty in the town of Canóvanas, fired several shots with a firearm, killed Santiago Flores Quintero and wounded Javier Jiménez González. He was thereby charged with several crimes. Both Vélez Meléndez and Fermín Martínez, who were insular policemen, testified under oath and their testimony was similar to the allegations which appear in the information previously copied. However, the evidence of the People tended to show that Martínez was in the place of the

occurrence at the time the shots were fired and that Vélez Meléndez was at the time at a considerable distance talking with a man called Budet about a gamecock. With this evidence before it the jury could very well conclude, as it did, that Vélez Meléndez was guilty of the crime of perjury, and that Martínez should be acquitted. We do not see how it can be alleged with any reason that in doing so the verdicts rendered were the result of a compromise. *Cf. People* v. *Negrón,* 73 P.R.R. 513.

■ Appellant finally alleges that "the verdict of the jury is contrary to the evidence since it does not show beyond any reasonable doubt that defendant was guilty." The evidence that the jury had before it was extensive enough and the study that we have made of the transcript of the evidence convinces us that in the record there is sufficient evidence to support the verdict rendered. *People* v. *Nicole,* 71 P.R.R. 810 and *People* v. *Millán,* 71 P.R.R. 410.

The judgment appealed from will be affirmed.